UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 12-12569 |
| BRADEN PAUL ROBINSON AND<br>MICHELLE THIBODAUX ROBINSON | SECTION B |
|     DEBTORS | CHAPTER 7 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

AARON E. CAILLOUET, CHAPTER 7 TRUSTEE
    PLAINTIFF

VERSUS                                                                                                                            ADVERSARY
                                                                                                                           PROCEEDING NO. 14 - 1043

BRADEN PAUL ROBINSON, et al.
    DEFENDANTS

## MEMORANDUM OPINION

      This matter came before the court on the complaint of the Chapter 7 Trustee. The parties to this dispute have elected to submit briefs in lieu of an evidentiary trial, and have both stipulated to the authenticity of the exhibits and 2004 examinations provided in the pre-trial order that is referenced in this opinion. The trustee seeks to avoid a note and mortgage executed by the debtors on July 24, 2007 in favor of a relative, Terry Robinson, who subsequently transferred the note to a Louisiana LLC wholly owned by an irrevocable trust in the interest of the debtors' children. For the reasons below, the trustee cannot avoid the note and mortgage: because (1) the trustee has not shown with reasonable certainty that the debtors did not receive loans from Terry Robinson and thus has not proved a simulation, and (2) the revocatory action is perempted by statute.

    **I.**    **Background Facts**

      On November 30, 1999, the debtors Michelle Robinson and Braden Robinson purchased immovable property with a municipal address of 8417 Panola Street, New Orleans, Louisiana

1

70118 ("Property"). *See Uncontested Material Fact (UMF) #1 in Joint Pre-Trial Order ("PTO").*[1]

On July 24, 2007, the debtors executed a promissory note in favor of Terri Robinson, the sister of debtor Braden Robinson, in the amount of $150,000.[2] *See UMF #2 in PTO.*

On July 24, 2007, the debtors granted Terri Robinson a second mortgage against 8417 Panola Street in the amount of $150,000.[3] *See UMF #3 in PTO.*

On October 9, 2007, the mortgage was recorded as Instrument No. 915997 in the public records of Orleans Parish. *See UMF #4 in PTO.*

Terri Robinson was the initial transferee of the note and mortgage. *See UMF #5 in PTO.*

On April 1, 2010, the debtors established the Braden and Michelle Robinson Children's Trust ("Children's Trust"). *See UMF #6 in PTO.*

The debtor Michelle Robinson is the sole trustee of the Children's Trust, and the beneficiaries of the children's trust are the debtors' children. *See UMF #7 in PTO.*

On April 14, 2010, RC Property Investments, LLC ("RC Property") was formed, and the 100% member of RC Property is the Children's Trust. *See UMF #8 in PTO.*

---

[1] The Joint Pretrial Order is pleading number 41.

[2] The promissory note, Exhibit 1, is indeed a strange instrument. It is not a negotiable instrument, i.e., it contains no "pay to the order of …" language as required by the Uniform Commercial Code, Louisiana R.S. 10:101 *et seq.*; it recites that the collateral is a recorded mortgage on certain property with the municipal address 8417 Panola Street, New Orleans, Louisiana, 70118 (*see* Filed Mortgage, Exhibit 2) but the note is not paraphed for identification with the mortgage, which though executed before a notary public and two witnesses, is certainly not in the customary form of a mortgage of immovable property in Louisiana. The note does contain a promise to pay a sum certain ($150,000) with interest at the rate of 4% per annum. There is an indefinite maturity date (10 years or sooner at the discretion of the borrower). Because these abnormalities, though unusual, do not really affect the simulation argument, they are not further discussed in this opinion.

[3] The mortgage, Exhibit 2, is an even stranger instrument than the note. Although it was executed before a notary public and in the presence of two witnesses and bears the fine print: "LOUISIANA-Single Family/Freddy Mac UNIFORM INSTRUMENT," it contains no legal property description as is required in a Louisiana mortgage affecting immovable property.

On or about April 15, 2010 Terri Robinson executed a notarial act of assignment, assigning the note and mortgage to RC Property. *See Uncontested Material Fact #9 in PTO.*

On May 21, 2010, the notarial act of assignment was recorded as Instrument No. 1009124 in the public records of Orleans Parish. *See UMF #10 in PTO.*

RC Property was an immediate or mediate transferee of the note and mortgage. *See UMF #11 in PTO.*

On June 1, 2010, Michelle Robinson executed a certified extract of act creating an irrevocable trust, stating that the note and mortgage were "subject to the [Children's Trust]." *See UMF #12 in PTO.*

There was never a formal transfer document executed transferring the note and mortgage to the Children's Trust, and the note and mortgage are still legally held in the name of RC Property. *See UMF #14 in PTO.*

On August 23, 2012, the debtors filed a voluntary petition in this bankruptcy court under Chapter 7 of the Bankruptcy Code.[4] *See UMF #15 in PTO.*

On August 22, 2014, the trustee filed a complaint and an objection to the proof of claim filed by the Children's Trust. The complaint sought to avoid and annul transfers of the note and mortgage by the debtors to Terri Robinson: (i) as an absolute simulation under 11 U.S.C. §544(b) and La. C.C. art. 2026, *et seq.*; or alternatively (ii) under 11 U.S.C. §544(b) and La. C.C. art. 2036, *et seq.* (revocatory action). *See complaint (P-1).* The complaint also sought to recover against RC Property under 11 U.S.C. §550. Finally, the complaint sought the disallowance of the proof of claim filed by the Children's Trust in the event the transfer above was annulled and avoided and the Trustee was awarded recovery.

---

[4] 11 U.S.C. § 101 *et seq.* All section references herein are to title 11 of the United States Code (the "Bankruptcy Code").

3

On February 9, 2015, this court signed a default judgment against defendant Terri Robinson. In the default judgment, this court stated that:

> The (i) July 24, 2007 promissory note in the amount of $150,000 executed by the debtors in favor of Terri M. Robinson, and (ii) the July 24, 2007 mortgage executed by the debtors in favor of Terri M. Robinson (recorded on October 7, 2007 as Instrument No. 915997 in the public records of Orleans Parish) be and are hereby found to be an absolute simulation and are ANNULLED and AVOIDED against Terri M. Robinson as the initial transferee, pursuant to 11 U.S.C. §544(b) and La. C.C. art 2026, *et al. See (P-32)*; *UMF #16 in PTO*.

## II. Revocatory Action Perempted

The trustee's claim under the revocatory action to annul the note and mortgage is statutorily perempted by La. Civ. Code Art. 2041 in its pre-amendment form. Prior to the 2013 amendment to La. Civ. Code Art. 2041, which was the version in effect at the time the note and mortgage were executed, the Code provided that:

> The action of the obligee must be brought within one year from the time he learned or should have learned of the act, or the result of the failure to act, of the obligor that the obligee seeks to annul, but never after three years from the date of that act or result.

The three (3) year period beginning after the "act" is the statutory life of the obligee's right to bring a revocatory action, at the termination of which, the right is perempted and no longer available to the obligee.[5] The note and mortgage, dated July 24, 2007, were recorded October 9, 2007 which is almost five (5) years before the debtors' filed their voluntary petition, on August 23, 2012, and seven (7) years before the trustee filed the complaint alleging a revocatory action. The trustee's complaint was filed August 22, 2014, in excess of three (3) years

---

[5] *See* La. Civ. Code Art. 3458, a peremptive right is "a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period."

4

following the execution of the note and mortgage, and hence, the right is extinguished and unavailable in this case.

La. Civ. Code Art. 2041 was amended in May, 2013,[6] to provide for the exemption of a fraud claim from the three (3) year peremptive period, but the amendment does not apply retroactively. The creation of a right constitutes a substantive change to the law, and absent a legislative expression to the contrary, a substantive change is never applied retroactively.[7] The amendment created the right to bring a fraud claim outside the three-year peremptive period and there is no statutory provision for retroactive application. In short, the trustee has no recourse against the debtor under La. Civ. Code Art. 2041.

### III. The Default Judgment Against Terri Robinson

In their joint trial brief, the debtors argue that because the note and mortgage were not simulations, the default judgment against Terri Robinson should not preclude the remaining defendants, as indispensable parties to the action, from re-litigating the merits of the default judgment. The debtors further argue that Federal Rule of Civil Procedure 54(b), made applicable to this proceeding through Federal Rule of Bankruptcy Procedure 7054(a), permits the court to make subsequent findings against a plaintiff after default judgment has been entered against a co-defendant, and that Louisiana law compels their joinder to the action as indispensable parties.[8]

---

[6] See Act No. 88, § 1.

[7] *See Thomassie v. Savoie*, 581 So. 2d 1031, 1034 (La. Ct. App.) *writ denied*, 589 So. 2d 493 (La. 1991). Louisiana courts have defined a substantive act as one that "create[s] . . . or destroy[s] rights . . . causes of action or legal duties." *Id.* *See also* La. Civ. Code Art. 6, "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only."

[8] The debtors rely on *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 554 (1872), for the proposition that judgment against a single co-defendant is improper, "incongruous and illegal." Defendant's Joint trial Brief, at p. 4.

5

The default judgment entered against Terri Robinson is not a final ruling in the case, Rule 54(b) provides that:

> Any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

It is within this court's discretion to certify a default judgment as a final ruling under Rule 54(b), but in the instant case, there was no request that the default judgment be certified as a final judgment.[9] Terri Robinson's claims are not severable from those of the debtors, and the default judgment was never expressly given finality so a determination was not made on the merits of the claims.

Unlike the situation in *Frow v. De La Vega*, the case cited by the defendants, the default judgment against Terri Robinson was not a "final decree."[10] In this regard, the ruling in *Frow* is distinguished from the default judgment involved here. In his reply brief, the trustee contends that the default judgment prevents the debtors from arguing that the transfers were not absolute simulations because the court has "decide[d] upon a rule of law" and "th[ose] same issues" under the "law-of-the-case" doctrine, are governed by that ruling in the "subsequent stages of the same case."[11] The ruling in *Peppers v. United States* is no more persuasive than *Frow* for the same

---

[9] This court did not expressly state that the default judgment was final, or that no reason for delaying the order's finality existed. This is within the discretion of the court. *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 474-75 (M.D. La. 2002).

[10] *Frow*, 852 U.S. at 554. Appellant sought to apply the "law of the case doctrine" to the district court's sentencing decision because it was a final judgment. *Id*.

[11] The trustee cites *Pepper v. United States*, 562 U.S. 476, 506 (2011), a decision in which the Supreme Court directed the Eighth Circuit to remand a sentencing decision under *de novo* review to the district court, and rejected the appellee's position that the "law of the case doctrine" barred the district court from disturbing any part of its prior sentencing decision that had not been appealed. The Court reasoned that the sentence was a package of sanctions, the calculus for which was changed by the Court's instructions regarding the departure that was appealed. Hence, the district court was not bound by its former ruling under the "law of the case doctrine", but free to resentence as it saw fit. *Id*. at 506-07.

6

reason; the ruling in *Peppers* was final and the default judgment against Terri Robinson was not. In *Peppers*, the Supreme Court described the "law-of-the-case" doctrine as "amorphous", and further elaborated that its effect "directs a court's discretion", but does "not limit the tribunal's power."[12] In the instant case, the court was not required to exercise its discretion because no one requested that the default judgment be made final.

Under Fed. R. Civ. Pro. 19, made applicable through Fed. R. Bank. Pro. 7019, a party must be joined in the action if "disposing of the action in the person's absence may . . . impair or impede the person's ability to protect the interest." RC Property is the holder of the note and mortgage at issue, its interest in which, is threatened by the outcome of this action. RC Property is an indispensable party to this action, and the default judgment against Terri Robinson does not prevent this court from allowing RC and the debtors to contest the merits of the trustee's claim that the note and mortgage transfers are an absolute simulation.

Louisiana law accords with this result. Under La. Civ. Code Art. 2042, the obligee seeking annulment of the obligor's transaction as an absolute simulation, must join the obligor (transferor) and transferee in the action.

### IV. Initial Transfer of Note and Mortgage

The existence of loans to the debtors from Terri Robinson is the determinant factual issue in this case because it will establish whether consideration for the July 24, 2007 note was given. According to the debtors' Rule 2004 Examination,[13] the note was executed after consideration

---

[12] *Frow,* 852 U.S. at 554.

[13] Braden Robinson testified in a Rule 2004 Examination on February 18, 2014 (Exhibit 29) and Michelle Robinson testified twice; once in a Rule 2004 Examinations on February 18, 2014 (Exhibit 30) and once in a deposition on May 27, 2015 (Exhibit 31).

7

was received in the form of a series of loans received prior to 2007. The trustee contests this assertion, arguing that the debtors' claim is unsupported by any documentation showing the loans were ever made. Although the trustee bears the burden of proof in each element of the absolute simulation claim, the trustee cites no authority to support his argument that the advances must be shown by a document preceding the note.

La. Civ. Code Art. 2027 provides that "a simulation is absolute when the parties intend that their contract shall produce no effects between them."[14] This provision has been interpreted by Louisiana courts to mean that a transaction in which "any consideration is given for the conveyance . . . is not a simulation", and the party alleging that a transaction is a simulation must show with reasonable certainty that none was received.[15]

Braden Robinson testified, in his Rule 2004 examination, that the note and mortgage were executed to repay Terri Robinson for a series of personal and business loans that "to the best of [his] recollection," amounted to more or less $150,000. The debtors' calculation of the amount was made according to memory, and the absence of any documentation for the loans is explained in the debtors' brief: "most of [the debtors'] financial records were destroyed by flooding in their basement during Hurricane Katrina in 2005, and again during Hurricane Gustav in 2008."[16]

---

[14] *Mills v. Int'l Mgmt. Consultants, Inc.*, 425 So. 2d 825, 826 (La. Ct. App. 1982) *writ denied*, 432 So. 2d 270 (La. 1983); *see also Wilson v. Progressive State Bank & Trust Co.*, 446 So. 2d 867, 869 (La. Ct. App. 1984) (Holding that "[a] simulated sale is one in which the parties do not have genuine intent to transfer or convey property, even though such sale be clothed in concrete form or legal formalities.").

[15] *Bennett v. Porter*, 2010-1088 (La. App. 3 Cir. 3/9/11), 58 So. 3d 663, 671. Early codifications of simulation law relied on the existence of a counter letter between the initial transferee and transferor to memorialize the concealed intent of the parties. Lemann, Thomas B., *Some Aspects of Simulation in France and Louisiana*, 29 Tul. L. Rev. 22, 26 (1954). A counter letter is clear evidence of the parties' concealed intent but is not the only proof available because under La. Civ. Code Art. 2027, the trustee need only show the elements with reasonable certainty.

[16] Exhibit 29, 2004 Examination taken February 18, 2014.

In her 2004 examination,[17] Michelle Robinson testified that "as much as she could recall", the loans from Terri Robinson could have gone into their personal or business bank accounts in the form of cash or check, and in some instances may have been paid directly to vendors and bypassed them completely.[18] The note and mortgage are presumed to be valid; this presumption, along with the debtors' realistic testimony under examination, are sufficient to support this court's finding that Terri Robinson advanced at least some funds to the debtors with the expectation of repayment, and that the note and mortgage were executed to evidence and assure that repayment.

The trustee's request that the debtors provide documentation for the advances does not shift the burden of proof to the debtors; the debtors' failure to provide documentation for the loans does not excuse the trustee from his burden to produce evidence showing that no loans were ever made. Hence, the trustee has not shown that the transfer was without effect between the parties under La. Civ. Code Art. 2026.

Similarly, the trustee has not adduced evidence showing, as required under La. Civ. Code Art. 2026, that the debtors intended at the time the note and mortgage were executed, that no effects be produced between them. The note, however unusual the terms, was secured by the properly recorded mortgage, and it is presumed to be within the parties' intent at the time the note was executed, that the parties would perform their obligations as specified under the terms.

---

[17] Exhibit 30, 2004 Examination taken February 18, 2014.

[18] *Id* at p. 46.

It is undisputed that the transfer of the note and mortgage by Terri Robinson to RC Property involved no monetary consideration.[19] The transfer was a gift from Terri Robinson to her niece and nephew and not comparable to an ordinary business transaction. The transfer would have resembled a gift more directly had the Children's Trust been the recipient, but the result is the same when the transferee is a wholly owned entity of the Children's Trust. The trustee has not shown that the establishment of the trust, and transfer of the note and mortgage to its subsidiary in 2010, were contemplated acts by the parties when the note and mortgage were executed in 2007. A counter letter or other evidence of the parties' intent, executed along with the transfer, is traditionally the method of proving an absolute simulation, but nothing to this effect is shown in the instant case.[20]  The court finds the trustee has not met his burden of proof of showing the initial transfer by the debtors was for no consideration and produced no effects between the parties.

V.   **Conclusion**

For the reasons set forth in this memorandum opinion, the trustee's complaint is dismissed. A separate judgment will be entered in accordance with this opinion.

New Orleans, Louisiana, November 12, 2015.

                                                Jerry A. Brown
                                                U.S. Bankruptcy Judge

---

[19]  Exhibit 3. The recorded notarial act of assignment listed only "love and affection" felt by the transferee as consideration for the transfer of the note.

[20]  *See* Lemann, *supra* note 11.

10